# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **KEVIN CRUMP,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case number 4:07cv1063 ERW** |
| | ) | **TCM** |
| **MICHAEL BOWERSOX,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

The 28 U.S.C. § 2254 petition of Kevin Crump ("Petitioner"), a Missouri prisoner serving an aggregate term of thirty years' imprisonment, for federal habeas corpus relief is before the undersigned United States Magistrate Judge for a review and a recommended disposition.  See 28 U.S.C. § 636(b).

## Background

On May 30, 2002, Richard White, a detective with the Maryland Heights Police Department ("the Department"), signed a complaint charging Petitioner with one count of first degree robbery and one count of armed criminal action.  (Resp. Ex. B at 5-7.)  This complaint included a "Probable Cause Statement of Facts."  (Id. at 6.)  An arrest warrant for Petitioner was filed with the Circuit Court the same day.  (Id. at 8.)  The following day, the warrant was returned.  (Id. at 9-10.)

On June 20, a preliminary hearing was held and was followed by Petitioner being bound over for trial. (<u>Id.</u> at 1.) That same day, an information charging him with the two felonies was filed. (<u>Id.</u> at 1, 11-13.)

Before trial, Petitioner filed a motion to suppress statements and a motion to suppress identification. (<u>Id.</u> at 16-19.) The day trial began, the charges against him were amended to add a count for being a persistent offender. (<u>Id.</u> at 22-25.) Also on that day, Petitioner's trial counsel filed a motion in limine to restrict the prosecutor from making certain references during his opening statement and a motion to quash the arrest warrant on the grounds that it was issued on a complaint that was defective because it was (a) not verified by oath or affirmation or (b) signed by the prosecutor on information and belief. (<u>Id.</u> at 26-30.) The first motion was granted; the second was denied. (<u>Id.</u>) The two motions to suppress were denied following a hearing at which Daniel Fleig, a sergeant with the Department, testified. (Resp. Ex. A-1 at 2-35.)

The first witness to testify at trial was Robert Line. (<u>Id.</u> at 158-86.) He was working at a QuickTrip store in the early morning hours of May 20, 2002, when an African-American man came in and asked for a pack of cigarettes. (<u>Id.</u> at 158, 159, 160.) Line turned his back on the man to get the cigarettes; when he turned around the man had switched positions and was pointing a gun at Line. (<u>Id.</u> at 162.) The gun was "black, silver" – silver with a black stripe. (<u>Id.</u> at 163.) The man asked where Line kept the money and then took the cash in the register drawer. (<u>Id.</u>) Another man, wearing a hat and a scarf around his mouth, was present. (<u>Id.</u> at 164.) The first man handed this second

man the money.  (Id.)  The first man demanded more money and took the rolled change

from the opened safe.  (Id. at 165.)  The two men ran from the store.  (Id. at 166.)  Line

telephoned "911."  (Id. at 167.)  Line further testified that he had gone to a live line-up

identification, had asked two of the five men in the line-up to step forward so he could get

a closer look, asked the two men to say "where's the money," and was 100% positive that

the man he then identified was the man with the gun.  (Id. at 169-72, 174.)  Certain facial

features of the man with the gun, i.e., his nose, the curvature of his face, and "a somewhat

larger set of lips," were distinctive and were the same as Petitioner's.  (Id. at 175, 186.)

Trial counsel's questions on cross-examination about an earlier identification by Line of

another man – identified outside the jury's hearing as Paul Day – were not allowed

pursuant to a favorable ruling on the State's motion in limine.  (Id. at 179-80, 181-82.)

The next witness to testify was Sergeant Fleig.  (Resp. Ex. A-2 at 188-94.)  Fleig

explained that Craig Goudeau had been identified as a suspect in the QuickTrip robbery

and had told the police that the other man involved was named Crump.  (Id. at 188-89.)

A man by that name was later arrested, placed in a live line-up, and identified by Line as

the robber with the gun.  (Id. at 189-92.)  The man was Petitioner.  (Id. at 192.)

Christopher Pranschky, a police officer with the Department, responded to the "911" call

and saw two sets of footprints heading north from the building.  (Id. at 194-96.)  After

following the footprints for approximately 20 to 30 feet, Pranschky called for a canine

unit.  (Id. at 196-97.)  The dog tracked the footprints to the front of the Arbor Hill

apartment complex, 186 Grape, Apartment E.  (Id. at 197, 199.)

Ventery Nicholson was Goudeau's girlfriend at the time of the robbery and his wife at the time of trial. (<u>Id.</u> at 205.) She testified she had known an Exavier Crump, who she identified as Petitioner, for a long time. (<u>Id.</u> at 206-07.) After the robbery, Petitioner called her four to six times to ask what was going on with Goudeau. (<u>Id.</u> at 213-14.) On cross-examination, she was asked if she used to "mess around" with Petitioner and if that was the reason Goudeau was angry with him. (<u>Id.</u> at 217.) She replied "no" to each question. (<u>Id.</u>) On recross, she was asked if she was testifying at the trial to make sure that her story was the same as Goudeau's, who was also going to testify. (<u>Id.</u> at 220.) She replied that she was not. (<u>Id.</u>) She further testified that Goudeau had been locked up since the robbery. (<u>Id.</u> at 214, 216.)

Goudeau testified and identified Petitioner as the man who robbed the clerk. (<u>Id.</u> at 231-32, 243.) It was Petitioner's idea to rob the QuickTrip and he suggested that Goudeau should help him. (<u>Id.</u> at 236–38.) At first, Goudeau declined to participate, but changed his mind after Petitioner persisted. (<u>Id.</u> at 236-39.) Petitioner took a dark colored gun from some cushions and they walked to the QuickTrip. (<u>Id.</u> at 240-42.) Petitioner walked into the store; Goudeau hung back. (<u>Id.</u> at 242-43.) When Goudeau entered the store, he saw Petitioner on the other side of the counter with the gun and telling the clerk to open the registers. (<u>Id.</u> at 243.) Petitioner put some money on the counter and told Goudeau to grab it. (<u>Id.</u> at 244.) He did and ran. (<u>Id.</u> at 244, 245.) He and Petitioner returned to his apartment. (<u>Id.</u> at 245-48.) After giving him approximately $75, Petitioner kept the rest of the money. (<u>Id.</u> at 250.) Goudeau was arrested and questioned about the robbery.

(Id. at 258-61.)  He eventually confessed and identified Petitioner as the other man involved.  (Id. at 261.)  Asked how long he had known Petitioner he replied, "Since a year I've been locked up probably like, probably like two; not even two years."  (Id. at 232.)  On cross-examination, Goudeau was questioned about his inconsistent statements – he had earlier admitted lying when he gave his first written statement to police – and about whether Petitioner had "messed" with Nicholson.  (Id. at 270-72, 274-76.)  Asked on cross-examination how long he had known Petitioner, he replied, in relevant part, "I only really seen him like six or seven times in my whole life, you know.  He was locked up, he got locked up –" (Id. at 283.)

Another officer with the City of St. Louis Police Department, Brian Jost, testified that he had spoken with members of the Maryland Heights Police Department in May 2002 about the QuickTrip robbery.  (Id. at 289.)  He was shown some surveillance photos and asked if he knew anyone by the last name of Crump.  (Id. at 290.)  The following exchange then occurred:

Q.      When they gave you the name of Crump were you familiar with that name?

A.      I was, I had heard the name.

Q.      And what area had you heard that name from?

A.      I work in a specialized unit in the Housing Authority Projects, and I heard the name through people in the Peabody Housing Complex.

Q.      At the Peabody Housing Complex is where you heard the name Crump?

A.      Yes.

(Id. at 291.)  Later, when on foot patrol, Jost saw a man who resembled the one in the surveillance photo and who reluctantly identified himself as Crump.  (Id. at 292-93.)  Jost also saw two rounds of live ammunition – of the same caliber as the gun allegedly used in the robbery – on the ground by the man.  (Id. at 294, 303.)  He identified Petitioner as that man.  (Id. at 296.)  Detective White testified that he had shown police officers with the City of St. Louis surveillance photos and told them he was looking for a man with the name of Crump.  (Id. at 308-09.)  They had heard the name.  (Id. at 309.)  White later questioned Petitioner, who refused to talk about Goudeau or the robbery.  (Id. at 313-14.)  After he told Petitioner that they both knew it was him in the photos, Petitioner replied, "I know I'm going to prison, but I'm not going to talk to you about the robbery."  (Id. at 314.)

After Jost's testimony, the State rested.  (Id. at 326.)

After being advised by trial counsel that Petitioner did not intend to put on any evidence, the court questioned Petitioner about his decision.  (Id. at 327-28.)  The court asked Petitioner three times if it was his decision not to testify.  (Id. at 328.)  Each time, Petitioner answered in the affirmative.  (Id.)

After less than three hours of deliberation, the jury returned a verdict of guilty on both counts.  (Id. at 359.)

At his sentencing hearing a few months later, Petitioner argued that the prosecutor had back-dated files to make the warrant legal and that the complaint was unverified.  (Id. at 362.)  The court sentenced him to thirty years' imprisonment on the robbery charge and

to a concurrent ten year sentence on the armed criminal action charge. (Id. at 363.) The court then questioned Petitioner about his satisfaction with his trial counsel's representation. (Id. at 364-69.) He was not satisfied. Among other things, he complained that they did not have sufficient time "to prepare a defense as far as I should have took [sic] the stand." (Id. at 368.) If Petitioner had taken the stand, even though his prior convictions for robbery, kidnaping, and assault would have been revealed, he could have brought out that someone else was there – someone else had been picked out of the lineup. (Id.) He also could have brought out that Goudeau had been tortured. (Id.)

Petitioner appealed his conviction on two grounds. (Resp. Ex. C.) He first argued that the trial court had plainly erred by not allowing the jury to hear evidence that Line had picked Day out of a photographic lineup as his assailant, such evidence being relevant to Petitioner's defense of mistaken identity and to the issue of the reliability of Line's later identification of Petitioner. (Id. at 11.) He also argued that the trial court had plainly erred by not sua sponte declaring a mistrial after (a) Goudeau testified that Petitioner had been locked-up, such evidence betraying that Petitioner had a prior arrest, and (b) Jost and White each testified that a police unit assigned to the housing authority had heard Petitioner's name, such evidence being indicative that Petitioner had been involved in other criminal activity. (Id. at 12.)

The appellate court found each ground to be unavailing. (Resp. Ex. E.) Addressing Petitioner's first argument, the court specifically found that because Petitioner had consented to the State's motion in limine prior to trial and had failed to make a specific

and definite offer of proof when the testimony was offered at trial, neither the State nor the trial court could have known what Petitioner's line of questioning about the prior identification was intended to prove. (Id. at 4.) "[Petitioner] did not explain for the record what [Line's] testimony would be, what purpose and object the testimony would serve, and what facts were essential to establishing the admissibility of the testimony." (Id.) Given the circumstances, the court declined to review the first argument for plain error. (Id. at 5.)

Addressing Petitioner's second argument, the court found that the testimony of Goudeau, Jost, and White was not evidence of other crimes committed by Petitioner. (Id.) The questions to, and answers from, the three witnesses "did not create an inference that [Petitioner] had been involved in previous criminal activity, and the fact that the police officers knew of [Petitioner] did not necessarily imply that [Petitioner] had a criminal record. In fact, this information reinforced the officers' testimony and helped to establish [Petitioner's] identity. None of the three witnesses made any reference to a specific criminal act committed by [Petitioner]; these vague and indefinite references did not warrant mistrial." (Id. at 6.)

The appellate court issued its mandate on October 20, 2004. See State v. Crump, ED83449 (Mo. Ct. App. Oct. 20, 2004) (Missouri Case.net https://www.courts.mo.gov/casenet/cases/searchDockets.do (last visited May 10, 2010). Petitioner did not move to transfer his appeal to the Missouri Supreme Court or petition the United States Supreme Court for a writ of certiorari. (Pet. at 3.)

Seeking post-conviction relief, Petitioner filed a pro se motion under Missouri Supreme Court Rule 29.15 on December 23, 2004.  (Resp. Ex. F at 3-18.)  An amended motion filed by appointed counsel incorporated the pro se motion and raised an additional four grounds.  (Id. at 24-91.)  Specifically, appellate counsel was ineffective for failing to assert error in the trial court's denial of his motion to quash the arrest warrant on the grounds it was invalid, having been issued on a complaint that was defective because it was not (i) verified by oath or affirmation or (ii) signed by the prosecutor on information and belief.  (Id. at 27.)  Trial counsel was ineffective for (a) consenting to the State's motion in limine to exclude argument about or evidence of Paul Day's culpability for the crime; (b) failing to object or request a mistrial after (i) Goudeau referred to Petitioner having been "locked up" and (ii) Jost and White testified about having heard of Petitioner; and (c) failing to call Petitioner to testify after Petitioner indicated at the close of the State's case that he wanted to take the stand.  (Id. at 27-29.)

Petitioner was denied relief without an evidentiary hearing.  (Id. at 93-107.)  In his subsequent appeal, Petitioner raised the same four arguments presented in his amended Rule 29.15 motion.  (Resp. Ex. G.)  Each was rejected.  (Resp. Ex. I.)  The appellate court explained its decision, in relevant part, as follows.

> A complaint must be in writing and shall "be verified by oath or affirmation of the complainant for issuance of a summons or an arrest warrant or signed by a prosecuting attorney on information and belief for issuance of a summons."  Rule 22.02(e) (2002).

> On July 21, 2003, [Petitioner] filed a motion to quash the arrest warrant on the grounds that the complaint was not verified by oath or affirmation nor

was it signed by the prosecutor on information and belief for issuance of a summons. The trial court denied the motion to quash.

[Petitioner] contends that, had the denial of the motion to quash been raised upon direct appeal, we would have found the denial to be reversible error. However, the motion court was provided with a copy of the complaint which was signed by the complainant, Maryland Heights Detective Richard White ("Detective White"), and notarized on May 30, 2002. Thus, the complaint satisfied the requirements of Rule 22.02(e) (2002). As a result, [Petitioner's] claim that the trial court's denial of the motion to quash would have been reversed by this court is refuted by the record. . . .

In his second point on appeal, [Petitioner] claims the motion court clearly erred in denying his Rule 29.15 motion without an evidentiary hearing because he alleged facts indicating that his trial counsel was ineffective for consenting to the State's motion in limine to exclude argument or evidence concerning Paul Day's ("Day") possible responsibility for the crimes with which [Petitioner] was charged.

Evidence that someone other than the defendant may have committed the crime is admissible only where the defendant can demonstrate that the other person did some act directly connecting that person to the crime.

According to [Petitioner], there is evidence that Robert Line ("Line"), the Quick Trip employee who was working the night the crimes in question occurred, had said, during a photo line-up, that the robber resembled a picture of Day. Nonetheless, there is no evidence of any act committed by Day connecting him with the robbery. Thus, the evidence would have been inadmissible for the purpose of suggesting that Day committed the robbery. Therefore, because the evidence relating to Day was inadmissible, the motion court did not clearly err in denying [Petitioner's] claim that his trial counsel was ineffective for consenting to the State's motion in limine. . . .

In his third point on appeal, [Petitioner] asserts the motion court clearly erred in denying his Rule 29.15 motion without an evidentiary hearing because [Petitioner] alleged facts indicating that trial counsel was ineffective for failing to object and request a mistrial due to certain comments made about [Petitioner] during the testimony of Craig Goudeau ("Goudeau"), Officer Brian Jost ("Officer Jost"), and Detective White.

At [Petitioner's] trial, Goudeau testified that he had only seen [Petitioner] six or seven times in his life because [Petitioner] "was locked up, he got locked up." Detective White testified that some of the City of St. Louis police officers had "heard of" [Petitioner]. Officer Jost also testified that had [sic] "heard of" [Petitioner]. [Petitioner] claims that his trial counsel should have objected to these comments and requested a mistrial.

None of the three witnesses made any reference to a specific criminal act committed by [Petitioner]. The vague and indefinite references in question did not warrant a mistrial. Therefore, the motion court did not clearly err in finding that trial counsel was not ineffective for failing to make an objection to the comments in question. . . .

In his fourth point on appeal, [Petitioner] maintains the motion court clearly erred in denying his Rule 29.15 motion without an evidentiary hearing because [Petitioner] alleged facts indicating that trial counsel was ineffective for failing to call [Petitioner] to testify in his defense after he indicated a desire to do so at the end of the State's case.

After the State rested its case, [Petitioner's] trial counsel informed the court that the defense was not going to put on any evidence. The trial court then recessed the jury for a short period of time and subsequently asked [Petitioner] twice if it was in fact his intention not to testify. After both questions [Petitioner] answered "yeah." During this line of questioning, the trial court informed [Petitioner] that the decision of whether or not to testify was ultimately his decision. Thus, [Petitioner's] claim that he did not have the opportunity he desired to testify at trial is refuted by the record. . . .

(Id. at 3-6.) The appellate court's mandate issued on June 28. See Crump v. State, ED86750 (Mo. Ct. App. June 28, 2006) (Missouri Case.net https://www.courts.mo.gov/ casenet/cases/searchDockets.do (last visited May 11, 2010).

Petitioner signed his § 2254 petition on January 29, 2007. (Pet. at 15.) His petition also cites that day as the day it "was placed in the prison mailing system . . . ." (Id.) The postmark on the envelope in which his petition was mailed is May 30, 2007. The petition

raises the four grounds presented in Petitioner's post-conviction appeal. Respondent

contends that the petition is untimely and without merit.

**Discussion**

<u>Timeliness.</u>   Title 28 U.S.C. § 2244(d) provides, in relevant part, as follows:

(1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —

(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

. . .

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

When, as in the instant case, a petition for a writ of certiorari is not filed with the

United States Supreme Court after the conclusion of the direct appeal, the state court

judgment becomes final on the day after the direct appeal mandate is issued by the

Missouri Court of Appeals.  **<u>Riddle v. Kemna</u>**, 523 F.3d 850, 856 (8th Cir. 2008) (en

banc); **<u>McMullan v. Roper</u>**, 599 F.3d 849, 852 (8th Cir. 2010).   The mandate in

Petitioner's direct appeal was issued on October 20, 2004.   The one-year statute of

limitations began to run that day.  <u>See</u> **<u>Id.</u>**

"The one-year statute of limitations is tolled in accordance with § 2244(d)(2) while

a 'properly filed application for State post-conviction or other collateral review . . . is

pending.'" **<u>Id.</u>** (quoting <u>Williams v. Bruton</u>, 299 F.3d 981, 982 (8th Cir. 2002)) (alteration

in original). Petitioner filed his post-conviction motion on December 23, 2004. The time between the conclusion of his direct appeal on October 20, 2004, and this date does not toll the one-year statute of limitations. See **Id.** Thus, this 63-day period counts against the 365 days Petitioner had available to file his petition.

The remaining period, 302 days, was tolled until June 28, 2006 – when the state appellate court's mandate was issued in his post-conviction appeal. See **Id.** This period ended on a Friday, April 27, 2007.

The date Petitioner signed his petition – January 29, 2007 – would place Petitioner within the one-year period. The date the petition was postmarked – May 30, 2007 – would not. Noting that the "case presents a rare factual dispute about when the petition was filed," Respondent argues that it is not credible that the petition was placed in the prison mail system on January 29, 2007. (Response at 4.)

The Court finds it unnecessary to reach the question of when the petition was placed in the prison mail system. In **Burns v. Prudden**, 588 F.3d 1148, 1150-51 (8th Cir. 2009), the Eighth Circuit held that the doctrine of equitable tolling might apply to a habeas petition filed when its established law held that the statute of limitations did not begin to run until 90 days after the Missouri Court of Appeals denied an appeal. "This 90-day period was permitted because Nichols[ v. Bowersox, 172 F.3d 1068 (8th Cir. 1999) (en banc)] held that in that time period, a petitioner could file a petition for a writ of certiorari in the United States Supreme Court, regardless of whether the petitioner had filed a petition for transfer to the Missouri Supreme Court." **Id.** at 1150. The Nichols decision

was overruled in Riddle in April 2008.  **Id.**  Noting that "'[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way,'" the court held that the overruling of its Nichols en banc decision in April 2008 was "an extraordinary circumstance."  **Id.** at 1150-51 (quoting Riddle, 523 F.3d at 857).

Petitioner, like Burns, filed his habeas petition while Nichols was the law. Petitioner, like Burns, did not petition the United States Supreme Court for a writ of certiorari; however, as in **Burns**, if the 90-day period tolled the statute,[1] his petition would have been timely filed even if placed in the prison mail system on May 30, 2007.

In **Burns**, the Eighth Circuit remanded the case for findings on the other requirement for equitable tolling – whether the petitioner had diligently been pursuing her rights.  **Id.** at 1152.  In the interests of judicial economy, however, the Court will address the merits of the petition rather than engage in a fact-finding hearing on the issue of timeliness or of whether Petitioner diligently pursued his rights.  See **Shelton v. Purkett**, 563 F.3d 404, 407 (8th Cir.), cert. denied, 130 S.Ct. 739 (2009) (reaching merits of petition rather than

---

[1]The Eighth Circuit noted that "[t]he difference between the dates when the statue of limitations begins to run under Nichols and Riddle will generally be fewer than 90 days" because under Riddle if a defendant does not file a motion to transfer to the Missouri Supreme Court, the date of the appellate court's mandate is the end of the direct appeals process but the 90-day period for filing a petition for a writ of certiorari begins "from the earlier date of the final order denying the appeal."  **Burns**, 588 F.3d at 1151 n.2.  This difference would not affect the timely filing of Petitioner's petition.  The ten-day difference between the final order denying his direct appeal and the date of the mandate is not significant given that, accepting the postmark date as the date when the petition was placed in the prison mail system, there is only a 33-day possible gap between the conclusion of the one-year statute of limitations under Riddle and the filing of the petition. Affording Petitioner the benefit of the 90-days under Nichols more than compensates for this gap.

remanding for development of factual issue of whether petition was diligently pursuing his rights); **Trussell v. Bowersox**, 447 F.3d 588, 590 (8th Cir. 2006) (reaching merits of habeas petition rather than remanding for development of factual issue of timeliness).

<u>Merits of Petition.</u>  Title 28 U.S.C. § 2254(d) mandates that a federal court grant habeas relief on a claim that was adjudicated on its merits by the State courts *only* if the adjudication "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States'" or "'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" **Collier v. Norris**, 485 F.3d 415, 421 (8th Cir. 2007) (quoting § 2254(d)); <u>accord</u> **Christenson v. Ault**, 598 F.3d 990, 994 (8th Cir. 2010); **Losh v. Fabian**, 592 F.3d 820, 823 (8th Cir. 2010).  "'[A] decision is "contrary to" federal law . . . if a state court has arrived at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if it confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent but arrived at an opposite result.'" **Collier**, 485 F.3d at 421 (quoting <u>Davis v. Norris</u>, 423 F.3d 868, 874 (8th Cir. 2005)) (all but first alteration in original).  "'A state court unreasonably applies clearly established federal law when it identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  **Id.** (quoting <u>Davis</u>, 423 F.3d at 874) (alteration in original).  "Only rulings in Supreme Court decisions issued before the state court acts are considered clearly established federal law for a state court does not act

contrary to or unreasonably apply clearly established federal law if there is no controlling Supreme Court holding on point." **Losh**, 592 F.3d at 823 (internal citations omitted).

Petitioner first argues that his appellate counsel was ineffective for not raising on appeal a claim of trial court error in the denial of his motion to quash the arrest warrant.

It is well established that the Sixth Amendment guarantees the right to effective assistance of counsel on direct appeal. See **Douglas v. California,** 372 U.S. 353, 358 (1963); accord **Morales v. Ault**, 476 F.3d 545, 550 (8th Cir. 2007). To succeed on a claim of ineffectiveness of counsel on direct appeal, however, Petitioner must show, first, that appellate counsel's performance was below the reasonable standard of competence and, second, a reasonable probability that the result would have been different absent this deficient performance. See **Strickland v. Washington,** 466 U.S. 668, 687 (1984); **United States v. Brown**, 528 F.3d 1030, 1032-33 (8th Cir. 2008); **Link v. Luebbers**, 469 F.3d 1197, 1205 (8th Cir. 2006). Both the deficient performance standard and prejudice standard are rigorous. **Brown**, 528 F.3d at 1033. The former is so because "'[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal.'" **Id.** (quoting Jones v. Barnes, 463 U.S. 745, 751 (1983)). "Therefore, absent contrary evidence, '[the court] assume[s] that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy.'" **Id.** (quoting Roe v. Delo, 160 F.3d 416, 418 (8th Cir. 1998)).

Petitioner challenges his appellate counsel's failure to raise the issue of the validity of the arrest warrant, arguing that deficiencies in the underlying complaint would have

required the warrant be quashed.  The fatal flaw in this argument is that the court that reviewed this challenge would have reviewed the issue had it been raised on appeal and found the complaint *did* comply with state procedural rules.  Thus, Petitioner's argument that the issue, had it been raised and briefed on direct appeal, would have resulted in reversible error is refuted by the very court that would have decided the question on direct criminal appeal.  An attorney's decision not to raise an unwinnable issue on appeal is an important strategic decision in competent appellate advocacy and does not constitute ineffective assistance of counsel.  See **Jones**, 463 U.S. at 751-52; **Horne v. Tricky,** 895 F.2d 497, 500 (8th Cir. 1990).

Petitioner's remaining three grounds are claims of ineffective assistance of trial counsel.

"The right to effective assistance of counsel 'is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process.'" **Smith v. Rogerson**, 171 F.3d 569, 572 (8th Cir. 1999) (quoting <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 374 (1986)).  "'The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [relevant proceeding] cannot be relied on as having produced a just result.'" **Jackson v. Gammon**, 195 F.3d 349, 354 (8th Cir. 1999) (quoting <u>Kellogg v. Skon</u>, 176 F.3d 447, 452 (8th Cir. 1999)) (second alteration in original).  "Only reasonable competence, the sort expected of the ordinary fallible lawyer, is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (internal

quotations omitted).  Moreover, "[t]here is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy."  **Garrett v. Dormire**, 237 F.3d 946, 949-50 (8th Cir. 2001).

To establish that counsel's lack of competence violated the Sixth Amendment, the petitioner must show that counsel's performance was deficient and prejudicial.  **Kellogg**, 176 F.3d at 452.  To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'"  **Greiman v. Thalacker**, 181 F.3d 970, 972 (8th Cir. 1999) (quoting Strickland, 466 U.S. at 687).  To establish prejudice, a petitioner must "demonstrate that there is a reasonable probability that, but for counsel's claimed unprofessional errors, the result of the proceeding would have been different."  **Christenson**, 598 F.3d at 996 (citing Strickland, 466 U.S. at 694); accord **Williams v. Norris**, 576 F.3d 850, 858 (8th Cir. 2009).  "A reasonable probability is one sufficient to undermine confidence in the outcome."  **Armstrong v. Kemna**, 590 F.3d 592, 596 (8th Cir. 2010); accord **Garcia v. Bertsch**, 470 F.3d 748, 754 (8th Cir. 2006). The burden of showing a reasonable probability is the petitioner's.  **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992).

The question of prejudice from counsel's performance need not be reached if the performance was not deficient.  See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998).  Conversely, the question of counsel's allegedly deficient performance need not be

reached if a petitioner has failed to show prejudice. See **Strickland**, 466 U.S. at 697;

**Hoon v. Iowa**, 313 F.3d 1058, 1061 (8th Cir. 2002); **Siers v. Weber**, 259 F.3d 969, 974

(8th Cir. 2001). Thus, if a petitioner has failed to show that, but for an allegedly deficient

performance by his trial counsel, there is a reasonable probability that the outcome of his

trial would have been different, his claim of ineffective assistance of counsel fails.

**Morales**, 476 F.3d at 550.

Additionally, when reviewing claims of ineffective assistance of counsel in a habeas

case, the Court must "view what happened at trial through two filters, the first requiring

[it] to defer to judgments of trial counsel and the second requiring [it] to defer to the state

courts' application of federal law to the facts of the case." **Marcrum v. Luebbers**, 509

F.3d 489, 502 (8th Cir. 2007) (internal citations omitted).

Petitioner first claims that his trial counsel was ineffective for consenting to the

State's motion in limine to exclude evidence of, or argument about, another person's

responsibility for the robbery. The person at issue is Paul Day. The appellate court held

that, on the record before it – a record lacking any evidence of any act by Day connecting

him to the robbery – that the evidence excluded pursuant to the motion in limine –

evidence that Line had said during a photo line-up that Day resembled the robber – was

properly excluded. "'[W]ell-established' and 'widely accepted' rules of evidence . . .

'permit trial judges to exclude evidence if its probative value is outweighed by certain

other factors such as unfair prejudice, confusion of the issues, or potential to mislead the

jury.'" **Johnson v. Norris**, 537 F.3d 840, 849 (8th Cir. 2008) (quoting Holmes v. South

<u>Carolina</u>, 547 U.S. 319, 326-27 (2006)).  "These rules include those excluding evidence 'proffered by criminal defendants to show that someone else committed the crime with which they are charged.'" **<u>Id.</u>** (quoting <u>Holmes</u>, 547 U.S. at 327).  The rule in Missouri is that evidence that another person might have committed the crime "is not admissible without proof that such other person committed some act directly connecting him with the crime."  **<u>State v. Chaney</u>**, 967 S.W.2d 47, 55 (Mo. 1998) (en banc).  The evidence excluded by the State's motion in limine was that Line had picked Day's photo in a line-up as being of someone who resembled the robber.  There is no act of Day connecting him to the QuickTrip robbery.  Therefore, trial counsel's consenting to the State's motion in limine did not result in the exclusion of any evidence that would otherwise have been admissible.  Petitioner has failed to show any prejudice.  <u>See e.g.</u> **<u>Becker v. Luebbers</u>**, 578 F.3d 907, 916 n.6 (8th Cir. 2009) ("[T]rial counsel's failure to attempt to introduce inadmissible evidence comport[s] with the attorney-performance standard of <u>Strickland</u>.");  **<u>Skillicorn v. Luebbers</u>**, 475 F.3d 965, 974 (8th Cir. 2007) (trial counsel was not ineffective for not attempting to elicit testimony that would not have been admissible).

Petitioner has also failed to show any prejudice from trial counsel's failure to object and request a mistrial after Goudeau referred to Petitioner having been "locked-up" and the two police officers had testified that they had heard of him.  The appellate court characterized all these references as "vague and indefinite."

"The general rule under Missouri law . . . is that evidence of uncharged crimes, wrongs, or acts . . . is inadmissible for the purpose of showing the propensity of the

defendant to commit such crimes." **Harris v. Bowersox**, 184 F.3d 744, 752 (8th Cir. 1999) (second alteration in original). The appellate court held that the testimony in question did not warrant a mistrial. Thus, trial counsel's failure to request one "did not raise to the level of establishing ineffective assistance of counsel." **Anderson v. Goeke**, 44 F.3d 675, 680 (8th Cir. 1995) (trial counsel's failure to make objection to allegedly prejudicial evidence determined to be admissible was not ineffective assistance). See also **Clark v. Groose**, 16 F.3d 960, 963(8th Cir. 1994) (rejecting claim of ineffective assistance of trial counsel for failure to object to testimony of uncharged crimes; state appellate court ruled such testimony was admissible and ruling did not infringe on specific constitutional protection or amount to denial of due process).

Petitioner's final argument is that trial counsel was ineffective for not calling him to testify. The state appellate court found that Petitioner had the opportunity to testify and decided not to.

"[C]riminal defendants have a constitutional right to testify on their own behalf." **United States v. Bernloehr**, 833 F.2d 749, 751 (8th Cir. 1987) (citing Rock v. Arkansas, 483 U.S. 44, 51-52 (1987)); accord **Frey v. Schuetzle**, 78 F.3d 359, 361 (8th Cir. 1996). Only the defendant may waive this right. **Bernloehr**, 833 F.2d at 751; accord **Jones**, 463 U.S. at 751. A waiver of this right has been found when the defendant fails to object when his trial counsel rests without calling him to testify. See **Winfield v. Roper**, 460 F.3d 1026, 1035 (8th Cir. 2006). Not only did Petitioner not object when trial counsel rested without calling him to testify, see Respondent's Exhibit A-2 at 326, he assured the

trial court three times that it was *his* decision not to testify. <u>See</u> **Francis v. Miller**, 557

F.3d 894, 903-04 (8th Cir. 2009) (rejecting claim of ineffective assistance of trial counsel

for failing to offer petitioner's testimony at trial; although counsel had advised petitioner

not to testify state court's finding that decision was hers was supported by record);

**Winfield**, 460 F.3d at 1035 (rejecting habeas claim that trial counsel was ineffective for

not ensuring that petitioner testified; the state court's findings that petitioner had been

informed of right to testify, had been advised by counsel not to testify, and had not

protested when defense rested case were not clearly unreasonable and were fatal to claim);

**El-Tabech v. Hopkins**, 997 F.2d 386, 388-89 (8th Cir. 1993) (finding that defendant

voluntarily waived right to testify when he sat through jury instruction conference with

judge and did not say anything when a proposed jury instruction regarding the fact that

he did not testify was discussed); **Bernloehr**, 833 F.2d at 751 (defendant may not indicate

at trial that he acquiesces in counsel's advice not to testify and then later claim that will

to testify was overcome).

Additionally, Petitioner has failed to show that his proposed testimony – that he had

not been involved in the robbery[2] – would have resulted in a different verdict.[3] He would

have been subject to impeachment by his prior convictions, including for robbery. On the

_____

[2]<u>See</u> Respondent's Exhibits F at 63, G at 53 (indicating that Petitioner would have testified that he had not been involved in the robbery had he been called to the stand). <u>See also</u> R

[3]The Court notes that the proposed testimony outlined by Petitioner at sentencing would not have been admissible. There is no foundation for his testimony that Goudeau had been tortured and evidence that Day had been picked out of the photographic lineup had previously been ruled to be inadmissible.

other hand, Line, the victim, identified him as the robber with the gun and Goudeau identified him as his co-participant.  See **Foster v. Delo**, 39 F.3d 873, 877 (8th Cir. 1994) (en banc) (rejecting habeas claim that trial counsel was ineffective for failing to call petitioner to testify; petitioner had failed to show that there was a reasonable probability that the jury would have reached a different verdict had it heard his testimony).  The jury, having heard these two witnesses' testimony, returned a guilty verdict in less than three hours.  Petitioner's self-serving, impeachable testimony would not have outweighed the damaging testimony against him.  See **Christenson**, 598 F.3d at 997 ("When there is overwhelming evidence of guilt presented, it may be impossible to demonstrate prejudice" from any alleged ineffective assistance of trial counsel).

### Conclusion

Petitioner presents four grounds for relief.  Each was reached by the state courts and found to be without merit.  This conclusion is not contrary to clearly established Federal Law, is not an unreasonable application of such law, and is not an unreasonable determination of the facts.  Accordingly,

**IT IS HEREBY RECOMMENDED** that the 28 U.S.C. § 2254 petition of Kevin Crump be **DENIED** without further proceedings.

The parties are advised that they have **fourteen (14) days** within which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in waiver of the right to appeal questions of fact.

/s/ Thomas C. Mummert, III
                                        THOMAS C. MUMMERT, III
                                        UNITED STATES MAGISTRATE JUDGE

Dated this  13th  day of May, 2010.